

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 18, 2019

**BY ECF AND EMAIL**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007
EngelmayerNYSDChambers@nysd.uscourts.gov

> Re:  *United States v. Marie Palumbo*, 18 Cr. 390 (PAE)

Dear Judge Engelmayer:

The defendant in the above-captioned case is scheduled to be sentenced on April 25, 2019, at 11:00 a.m.  The Government respectfully submits this letter in connection with sentencing and in response to the defendant's submission, dated April 11, 2019 ("Def. Ltr.").  In the Presentence Investigation Report ("PSR"), dated April 16, 2019, the Probation Office calculated the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range to be 33 to 41 months' imprisonment (the "Guidelines Range").  Pursuant to a plea agreement between the parties dated January 11, 2019, the parties calculated the applicable Guidelines range to be 30 to 37 months' imprisonment (the "Stipulated Guidelines Range").  For the reasons set forth below, the Government submits that a sentence below the bottom of the Stipulated Guidelines Range of 30 months' imprisonment is appropriate in this case.

### I.      Offense Conduct

#### A.  The Hartley DTO

The Hartley Drug Trafficking Organization (the "Hartley DTO" or "DTO") consisted of individuals engaged in heroin and fentanyl trafficking in the Bronx, New York.  (PSR ¶ 9.)  From at least in or about 2015, up to and including in or about June 2018, the DTO is estimated to have distributed more than 100 kilograms of heroin, much of it mixed with fentanyl.  (PSR ¶ 9.)  The DTO controlled heroin sales between 182nd Street and 184th Street in the Bronx, New York, primarily between Jerome Avenue and University Avenue (the "DTO's Drug Territory").  (PSR ¶ 9.)  As a means of marketing its heroin, and to ensure that the only heroin sold in the DTO's Drug Territory belonged to the DTO, the DTO placed "stamps" on the glassines of heroin and fentanyl that it sold to customers.  (PSR ¶ 9.)  Among the stamps the DTO used were "Heisenberg," "Sleepless," "Peace of Mind," "Obsession," "Fist with Power Cord," "Sold Out," "Methadone," "Sweet Dreams," "and "Hands Up."  (PSR ¶ 9.)

Glassines marked with the DTO's stamps were recovered at the scene of at least five suspected overdose deaths in and around the DTO's Drug Territory. (PSR ¶ 10.) First, on or about September 11, 2017, an individual died of a suspected heroin overdose near the DTO's Drug Territory, and a glassine marked with the stamp "Obsession" was recovered at the scene of the overdose death. (PSR ¶ 10.) Second, on or about September 18, 2017, an individual died of a suspected heroin overdose near the DTO's Drug Territory, and a glassine marked with the stamp "Fist with a Power Cord" was recovered at the scene of the overdose death. (PSR ¶ 10.) Finally, between on or about December 12, 2017 and on or about January 2, 2018, three different individuals died of suspected heroin overdoses in a building within the DTO's Drug Territory. (PSR ¶ 10.) Glassines marked with the stamp "Hands Up" were recovered at the scene of each of these three deaths. (PSR ¶ 10.) Each time one of the DTO's stamps was recovered at the scene of an overdose death (or a member of the conspiracy was arrested), the DTO stopped using that stamp, and started using a new stamp. (PSR ¶ 11.)

This Court already has sentenced five members of the Hartley DTO, and another thirteen members will be sentenced by this Court in the next two months. The top tier of the Hartley DTO consisted of Maurice Hartley and Reginald Sanders. (*See* PSR ¶ 13.) Hartley was the leader, and was responsible for obtaining kilograms of heroin mixed with fentanyl. (PSR ¶ 13.) He worked with other members of the DTO to repackage the drugs into bags containing 20 bundles (10 glassines per bundle for a total of 200 glassines), to supply those drugs to members on nearly a daily basis (generally on credit), and to receive payment after those drugs were sold. Hartley controlled the DTO's stamps, which were used to brand their drugs and monitor the source of supply in the Hartley DTO's drug territory. (*See* PSR ¶ 9.) Sanders was Hartley's lieutenant. He was supplied directly by Hartley on a near-daily basis and assisted Hartley in controlling the DTO's drug territory by, among other things, carrying and threatening the use of firearms.

The second tier of the Hartley DTO consisted of Tyvann Barnett, Ronald Beasley, Aaron Carter, Gregory Carter, Johnny Mora, Hector Sanchez, and Jonathan Sanchez. (PSR ¶ 13.) Members of the DTO's second tier were supplied with heroin mixed with fentanyl directly by Hartley. (PSR ¶ 13.) For a period of time, Antonio Mora, who was not charged in this case, also was in the second tier. Members of the second tier primarily supplied (or, sometimes, sold) wholesale quantities (multiple bundles at a time) to lower-level dealers, including members of the Hartley DTO's third tier. (PSR ¶¶ 13, 14.)

The third tier of the Hartley DTO consisted of Javier Benitez, Louis Brown, Edward Davies, Alejandro Rodriguez, Ray Sanchez, Christopher Simon, and Freddie Torres. (PSR ¶ 14.) Members of the DTO's third tier were supplied with heroin mixed with fentanyl by members of the second tier. Members of the third tier sometimes sold wholesale quantities (multiple bundles at a time) to other lower-level dealers, but also sometimes sold smaller numbers of glassines to users. (*See* PSR ¶ 14.)

In addition, Johnny Ingram, the defendant, and Tia Jasper had special roles with the DTO that are separate from the three tiers described above. Ingram assisted the DTO by allowing Hartley and others to package drugs in his apartment and by making some deliveries of drugs for Hartley to members of the Hartley DTO's second tier. The defendant regularly purchased

substantial quantities of heroin mixed with fentanyl to primarily be used by her and her cousin as well as be sold in upstate New York. (*See* PSR ¶ 13.) Jasper is Hartley's girlfriend and the mother of his children, and assisted him with the operation of the DTO by communicating with other members of the DTO on his behalf and by making deliveries of drugs to members of the Hartley DTO's second tier. (*See* PSR ¶¶ 15-17.)

### B. The Defendant's Conduct

From at least 2015 until June 2018, the defendant regularly purchased significant quantities of heroin directly from the Hartley DTO, in part for redistribution in upstate New York. Unlike all of the other defendants who have been sentenced to date, the defendant was not within the core membership of the conspiracy, and thus does not fall within the three-tier DTO structure referenced herein. During the investigation, the defendant was observed regularly traveling from upstate New York to purchase heroin directly from Hartley. The defendant would purchase between 5 and 40 bundles at a time and toward the end of the conspiracy she was traveling to the Bronx approximately once a week to purchase heroin. Each bundle the defendant purchased contained approximately half of a gram of mixtures and substances containing heroin and/or heroin laced with fentanyl. While the defendant resold the heroin she purchased to a handful of other heroin users on occasion and would purchase heroin frequently on behalf of her cousin, she was primarily buying heroin for personal use. The parties stipulated to a Stipulated Guidelines range that reflects the defendant's accountability for the redistribution of between 40 grams and 160 grams of heroin mixed with fentanyl, which amounts to between approximately 800 and 3,200 individual glassines over a three-year period. (*See* PSR ¶ 32.)

## II. Procedural History

On June 4, 2018, the defendant was charged by Indictment 18 Cr. 390 (PAE) with one count of participating in a conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin and 400 grams and more of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (PSR ¶¶ 1-2.) On January 24, 2019, the defendant pled guilty pursuant to a plea agreement to participating in a conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of heroin and mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. (PSR ¶ 5.) In the plea agreement, the parties stipulated that the offense involved at least 40 grams but less than 160 grams of heroin mixed with fentanyl, yielding an offense level of 18. (PSR ¶ 5.) As stipulated by the parties, the defendant is in Criminal History Category II,[1] and her Stipulated Guidelines Range is 30 to 37 months' imprisonment. (PSR ¶ 5.)

---

[1] The Probation Office calculated that the defendant had four criminal history category points, stemming in part from its determination that the defendant's conviction listed in paragraph 54, warranted two criminal history points as the defendant's original sentence of 3 years' of probation was revoked and she was re-sentenced to 165 days in prison in 2006. *See* U.S.S.G. §§ 4A1.1 (b), 4A1.2(k)(2). While the Government agrees with the Probation Office's assessment, the Government stands by its stipulation in the parties' plea agreement, which attributed no criminal history points to this conviction, and accordingly, the defendant's criminal history category under

On April 11, 2019, the defendant submitted a sentencing letter in which she requested a sentence of time served due to her more minor role in the offense conduct relative to her co-defendants, her immediate acceptance of responsibility and her life-long battle with drug addiction. (Def. Ltr. 6-11.) The Probation Office recommended a below-Guidelines sentence of 12 months' imprisonment. (PSR at 27-28.)

## III.    Sentences Imposed on Co-Defendants

To assist the Court in assessing the relative culpability of the defendant, the Government provides the following chart:

| Defendant | Tier of Hartley DTO | Criminal History Category | Mandatory Minimum (months) | Guidelines Range (months) | Sentence Imposed (months) |
|---|---|---|---|---|---|
| Maurice Hartley | 1 | II | 120 | 292 to 365 | |
| Reginald Sanders | 1 | IV | 180 | 270 to 322* | |
| Tyvann Barnett | 2 | II | 180 | 188 to 235** | |
| Ronald Beasley | 2 | VI | 60 | 130 to 162 | |
| Aaron Carter | 2 | III | 60 | 108 to 135 | 84 |
| Gregory Carter | 2 | I | 60 | 108 to 135 | 75 |
| Johnny Mora | 2 | I | 180 | 135 to 168** | |
| Hector Sanchez | 2 | IV | 120 | 188 to 235 | 120 |
| Jonathan Sanchez | 2 | V | 60 | 140 to 175 | |
| Javier Benitez | 3 | II | 0 | 78 to 97 | |
| Louis Brown | 3 | V | 60 | 130 to 162 | |
| Edward Davies | 3 | III | 60 | 87 to 108 | 60*** |
| Alejandro Rodriguez | 3 | IV | 60 | 121 to 151 | 66 |
| Ray Sanchez | 3 | VI | 60 | 130 to 162 | |
| Christopher Simon | 3 | IV | 60 | 100 to 125 | |
| Freddie Torres | 3 | VI | 0 | 151 to 188 | |
| Johnny Ingram | Other | I | 120 | 108 to 135** | |
| **Marie Palumbo** | **Other** | **II** | **0** | **30 to 37** | |
| Tia Jasper | Other | I | 0 | 51 to 63 | |

\* Sanders pled guilty pursuant to a *Pimentel* letter, not a plea agreement.
\*\* Barnett, Mora, and Ingram pled guilty pursuant to plea agreements that did not include a stipulated Guidelines range.
\*\*\* In imposing sentence for Davies, the Court indicated that it would have imposed a sentence of 66 months' imprisonment, but gave Davies credit for the discharged six-month term of imprisonment for Davies's October 25, 2017 conviction for criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law Section 220.03.

---

the parties' plea agreement is II, and not a criminal history category of III as the Probation Office has concluded.

## IV. Discussion

### A. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence at the Bottom of the Stipulated Guidelines Range Is Appropriate In This Case

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct to the defendant, and to protect the public from further crimes of the defendant. These considerations weigh in favor of a sentence below the bottom of the Stipulated Guidelines Range of 30 months' imprisonment.

*First*, a sentence below the Stipulated Guidelines Range would appropriately reflect the nature and seriousness of the defendant's conduct. The defendant regularly purchased significant quantities of heroin directly from the Hartley DTO, in part for redistribution in upstate New York. She was supplied directly by Hartley and various members of the DTO who were instructed by

Hartley to deliver the heroin directly to the defendant. Although the poison the defendant redistributed in upstate New York caused harm to members of her community, including her own cousin, as well as to herself, it appears that the defendant was primarily buying heroin from the DTO for her own personal use. Indeed, the defendant appears to have been suffering from a serious drug addiction during the course of the conspiracy and her drug sales were done in support of her addiction. While the defendant's addiction does not negate her culpability or the harm she inflicted upon her community, it is a factor the Court should consider in fashioning an appropriate sentence in this case.

*Second*, a sentence of imprisonment would provide just punishment for the offense and appropriately deter the defendant from engaging in future criminal conduct. The current conviction is the defendant's fifth known conviction and with respect to two of her prior convictions she also violated the terms of her probationary sentences. Although the defendant has failed in the past to correct her trajectory and avoid brushes with law enforcement, the custodial term the defendant has served to date is by far the longest time she has spent in prison. A sentence of imprisonment is appropriate to punish the defendant for becoming involved with the DTO given her previous criminal history and to assure that the defendant is appropriately deterred from engaging in further criminal conduct.

*Finally*, the Government acknowledges that the defendant has had a difficult life, which contributed to her serious drug addiction. (*See* Def. Ltr. 2, 6-11.)

[intentionally left blank]

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence below the Stipulated Guidelines Range of 30 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Aline R. Flodr
Michael K. Krouse
Stephanie Lake
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1110/2279/1066/2616

Cc: David Touger, Esq. (by ECF and email)

Rev. 07.20.2016